**SILVERMANACAMPORA LLP**
Attorneys for Kangadis Food Inc.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Anthony C. Acampora
Adam L. Rosen
Lon J. Seidman

**Hearing Date: October 15, 2014**
**Time: 1:30 p.m.**

**Objections Due: October 8, 2014**
**Time: 4:00 p.m.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:

KANGADIS FOOD INC.,
  d/b/a The Gourmet Factory,

                              Debtor.
-----------------------------------------------------------x

KANGADIS FOOD INC.,

                              Plaintiff,

            - against -

JOSEPH EBIN and YERUCHUM JENKINS,
individually and on behalf of all others
similarly situated,

                              Defendants.
-----------------------------------------------------------x

Chapter 11

Case No. 14-72649 (REG)

Adv. Pro. No. 14-08276 (REG)

**NOTICE OF HEARING ON**
**PLAINTIFF'S MOTION FOR ORDER STAYING *EBIN II* ACTION**

   **PLEASE TAKE NOTICE**, that on September 30, 2014, plaintiff Kangadis Food Inc. filed

a motion (the "**Motion**") seeking entry of an order, pursuant to sections 105(a) and 362 of title

11, United States Code (the "**Bankruptcy Code**"), staying the action titled *Joseph Ebin,*

*Yeruchum Jenkins, et al. v. Kangadis Family Management, LLC, et al.*, Index No. 14-CV-1324

(JSR), currently pending in the United States District Court for the Southern District of New

York, and will move before the Honorable Robert E. Grossman, United States Bankruptcy

Judge, at the United States Bankruptcy Court for the Eastern District of New York, Alfonse M.

D'Amato U.S. Courthouse, 290 Federal Plaza, Central Islip, New York, on **October 15, 2014** at

BPOWERS/1609101.1/063637

**1:30 p.m.** (the "**Hearing**"), or as soon thereafter as counsel can be heard concerning the relief sought in the Motion.

PLEASE TAKE FURTHER NOTICE, that a copy of the Motion is on file with, and may be inspected at, the Clerk of the Court, United States Bankruptcy Court for the Eastern District of New York, Alfonse M. D'Amato U.S. Courthouse, 290 Federal Plaza, Central Islip, New York during its regular business hours or by accessing the Court's website at www.nyeb.uscourts.gov for registered users of the PACER system.  Copies may also be obtained by contacting attorneys for the Debtor in writing at SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, Attention: Brian Powers, Esq., (516) 479-6300; bpowers@silvermanacampora.com).

PLEASE TAKE FURTHER NOTICE, that objections to the Motion, if any, must be (i) filed with the Court electronically in accordance with General Order 559 by registered users of the Court's electronic case filing system and, by all other parties in interest, mailed to the Clerk of the United States Bankruptcy Court for the Eastern District of New York, Alfonse M. D'Amato U.S. Courthouse, 290 Federal Plaza, Central Islip, New York, with a hard copy delivered directly to the Chambers of the Honorable Robert E. Grossman, and (ii) served in accordance with General Order 559 or other form upon: (a) SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York, 11753, Attn: Adam L. Rosen (attorneys for the Debtor); and (b) the Office of the United States Trustee, 560 Federal Plaza, Central Islip, New York 11722, Attn: Stan Yang, so as to be filed and received by no later than **October 8, 2014** at **4:00 p.m.**

BPOWERS/1609101.1/063637

**PLEASE TAKE FURTHER NOTICE**, that the Hearing may be adjourned from time to time without further notice other than the announcement of such adjournment in open Court, or the filing of a notice of adjournment on the docket of the Debtor's case.

Dated: Jericho, New York
      September 30, 2014

                **SILVERMANACAMPORA LLP**
                Attorneys for Kangadis Food, Inc.


                By: *s/ Anthony C. Acampora*
                    Anthony C. Acampora
                Member of the Firm
                100 Jericho Quadrangle, Suite 300
                Jericho, New York 11753
                (516) 479-6300

**SILVERMANACAMPORA LLP**
Attorneys for Plaintiff Kangadis Food Inc.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Anthony C. Acampora
Adam L. Rosen
Lon J. Seidman

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:

KANGADIS FOOD INC.,
  d/b/a The Gourmet Factory,

                         Debtor.
-----------------------------------------------------------x

KANGADIS FOOD INC.,

                         Plaintiff,

       - against -

JOSEPH EBIN and YERUCHUM JENKINS,
individually and on behalf of all others
similarly situated,

                    Defendants.
-----------------------------------------------------------x

Chapter 11

Case No. 14-72649 (REG)

Adv. Pro. No. 14-08276 (REG)

### PLAINTIFF'S MOTION FOR ORDER STAYING *EBIN II* ACTION

TO:    THE HONORABLE ROBERT E. GROSSMAN
       UNITED STATES BANKRUPTCY JUDGE

      Kangadis Food Inc. (the "Debtor"), the above-captioned debtor and debtor in possession, by its counsel, SilvermanAcampora LLP, submits this motion for an order, pursuant to sections 105(a) and 362 of title 11, United States Code (the "Bankruptcy Code"), staying *Ebin II* (defined below) (the "Motion"), and respectfully represents as follows.

### PRELIMINARY STATEMENT

      1.     In *Ebin II*, as a result of Judge Rakoff's order dated September 18, 2014 granting, in part, the KFM Parties' (defined below) motion to dismiss and dismissing *all* direct

claims against the individual defendants, the only remaining claims are Class Plaintiffs' (defined below) derivative claims under theory of *alter ego* liability against the KFM Parties.  Under the Second Circuit's holding in *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003), which was followed and explained by this Court in *In re Adler*, 494 B.R. 43 (Bankr. E.D.N.Y. 2013) (Grossman, J.), the continued prosecution of *Ebin II* will constitute a violation of the automatic stay because, if the District Court grants the relief requested, *i.e.*, if Judge Rakoff rules (on summary judgment), or if the District Court jury decides (at trial) that the KFM Parties are, in fact, liable as alter egos of the Debtor, then Judge Rakoff will be issuing a post-petition judgment that necessarily makes the Debtor liable for the pre-petition class claim.  This would be a nullity.  *See In re Adler,* 494 B.R. at 58  ("When the New York Supreme Court found the Debtor's alter ego Corporations liable . . . it thus issued a post-petition judgment that made the Debtor liable for a prepetition claim.  For that reason,  pursuant to the *Robins* and *Queenie* line of cases, the State Court Decision against the Debtor's alter ego Corporations violated section 362(a)(1)."); *see also Norton, 2014 Ann. Surv. of Bankr. Law*. 18 ("*[A]n action to determine that nondebtors are liable for a debtor's obligations under an alter ego or veil piercing theory is an effort to have the court determine that the nondebtors are legally the same as the debtor.  Such an action is thus logically stayed.*") (emphasis added).

2.        Moreover, under *Queenie,* even if Class Plaintiffs' alter ego claims are ultimately unsuccessful, the automatic stay still applies to the continued prosecution of *Ebin II*.  Under the *Queenie* analysis, regardless of the outcome, continued prosecution of *Ebin II* will result in an immediate adverse economic consequence to the Debtor's estate and its ability to reorganize. As Class Plaintiffs argued in their Renewed Lift Stay Motion (defined below), allowing *Ebin II* to continue simultaneously with this Court's estimation process creates a risk of inconsistent judgments because the District Court will also be determining the Debtor's liability in *Ebin II*. Importantly, if a judgment is rendered in *Ebin II,* the Debtor will be forced to come back to this Court to enforce the automatic stay or to seek a determination that the decision or judgment is a

nullity.    Additionally, the continuation of *Ebin II* jeopardizes the Debtor's chapter 11 reorganization because the KFM Parties (defined below) are unlikely to be able to afford to continue to defend *Ebin II* and make the payments and contributions required of them under the Debtor's Plan (defined below).

3.    In addition, although this Court previously denied the Debtor's Stay Enforcement Motion (defined below), the Court stated that "[f]acts change, pleadings change, positions change and they will cause a review of this Court." July 16, 2014 Hearing Trans. at 76:22-77:3 (ECF Doc. No. 136).   In this case, both the facts and the pleadings have changed.   Judge Rakoff's *Ebin II* Dismissal Order (defined below) has made clear that Class Plaintiffs have no direct claims against the KFM Parties (defined below), and all claims being prosecuted in *Ebin II* are alter ego claims that are property of the Debtor's estate.   Accordingly, this Court should stay the prosecution of *Ebin II*.

## GENERAL BACKGROUND

4.    On April 8, 2013, Joseph Ebin and Yeruchum Jenkins (the "Class Plaintiffs"), as class plaintiffs, commenced a class action against the Debtor in the United States District Court for the Southern District of New York (the "District Court") titled *Joseph Ebin, Yeruchum Jenkins, et al. v. Kangadis Food Inc., d/b/a The Gourmet Factory,* Index No. 1:13-cv-02311 (JSR) ("*Ebin I")*, asserting claims for relief for fraud and breach of warranty under both New York and New Jersey law relating to the Debtor's alleged mislabeling of the Debtor's "Capatriti 100% Pure Olive Oil."

5.    On October 31, 2013, after the conclusion of the discovery period in *Ebin I*, Class Plaintiffs applied to the District Court for leave to amend their complaint to add four (4) new party defendants, namely the defendants in the *Ebin II* case - Aristidis Kangadis, Andromahi Kangadis, Themis Kangadis (collectively, the "Principals") and Kangadis Family Management LLC ("KFM" and, together with the Principals, the "KFM Parties").   Class Plaintiffs sought to hold the KFM Parties liable on a veil-piercing theory for each of the claims already pled against the

Debtor.  By order dated November 4, 2013 (the "Nov. 4, 2013 Order"), the District Court denied Class Plaintiffs application, holding, *inter alia*, that Class Plaintiffs' alter-ego claims were premature as they had not obtained any judgment against the Debtor to enforce on a veil-piercing theory ("*At the same time, if plaintiffs do prevail in the instant lawsuit and obtain a judgment*, they may well be able to seek collection of it against any 'alter egos' they can prove *at the time*, whether by motion and hearing or by filing a *separate application.*") (emphasis added).  *See* Nov. 4, 2013 Order at 2, a copy of which is annexed hereto as **Exhibit A** to the Declaration of Anthony C. Acampora submitted in support of the Motion (the "Acampora Declaration").

6.      On or about February 8, 2014, Class Plaintiffs commenced a second action, titled *Joseph Ebin, Yeruchum Jenkins, et al. v. Kangadis Family Management, LLC, et al.*, Index No. 14-CV-1324 (JSR), currently pending in the United States District Court for the Southern District of New York (the "*Ebin II*"), against the KFM Parties.

7.      By Order dated April 18, 2014 (the "Apr. 18, 2014 Order"), the District Court dismissed the *Ebin II* case "without prejudice to being re-filed if otherwise appropriate upon *resolution of the related case* [*Ebin I*]", closed the case, and effectively imposed sanctions upon Class Plaintiffs' counsel.  *See* Apr. 18, 2014 Order (emphasis added), a copy of which is annexed as **Exhibit B** to the Acampora Declaration.

8.      On June 6, 2014, the Debtor commenced a case under chapter 11 of the Bankruptcy Code in this Court.  The Debtor remains in possession of its property and management of its affairs pursuant to Bankruptcy Code §§1107(a) and 1108.  To date, no committee, trustee, or examiner has been appointed in this case.

9.      On June 10, 2014, after a telephone conference regarding, among other things, KFI's bankruptcy filing, the District Court entered an order (the "June 10, 2014 Order") permitting Class Plaintiffs to re-file the complaint in *Ebin II*, acknowledging that its allegations were derivative of *Ebin I*, but finding that the circumstances had changed, presumably due to

the KFI bankruptcy filing.[1]  *See* June 10, 2014 Order, a copy of which is annexed as **Exhibit C** to the Acampora Declaration.

10.    On June 11, 2014, Class Plaintiffs filed a new complaint (the "*the Ebin II* Complaint"), asserting virtually the same causes of action against the KFM Parties as alleged in *Ebin I*, now under purported theories of veil piercing and alter ego, and the same claims re-alleged as "direct claims" against Themistoklis Kangadis and Aristidis Kangadis.  *See Ebin II* Complaint, a copy of which is annexed as **Exhibit D** to the Acampora Declaration.

11.    Specifically, Class Plaintiffs allege that Capatriti's label warrants that it contains "100% pure olive oil."  *Ebin II* Complaint ¶¶ 9, 10.  Class Plaintiffs further allege that they relied upon that purported warranty when deciding to purchase Capatriti.  *Id.*  Class Plaintiffs then allege that Capatriti does not contain "100 % pure olive oil," as stated on its label, but instead contains olive-pomace oil.  *Id.* ¶¶ 53–54.  Based on this, Class Plaintiffs claim they were financially harmed in that they paid more for Capatriti based on its label than they otherwise would have for pomace products.  *Id.* ¶ 7.

12.    In support of the derivative claims against the KFM Parties under the veil piercing and alter ego theories (the "Alter Ego Claims"), the *Ebin II* Complaint alleges that:

- ████████████████████████████████████████
  ████████████████ ;

- ████████████████████████████████████████
  █████████████ ;

- ████████████████████████████████████████
  ██ ;

- ████████████████████████████████████████
  ████████████████████████████████████████
  █████████████ ;

- ████████████████████████████████████████
  ████████████████████████████████████████

---

[1] By the June 10, 2014 Order, the District Court did not specify what these changed circumstances were, or how they changed the ability to assert the derivative veil piercing or alter ego claims against the KFM Parties.

AROSEN/1606512.4/063637

██████████ ;

- ███████████████████████████████████████████████████████

- ███████████████████████████████████████████████████████
████████████████████ .

13.     Promptly thereafter, on June 13, 2014, the Debtor filed its *Motion for Entry of Order: (I) Enforcing the Automatic Stay Pursuant to 11 U.S.C. §362(a); (II) Determining that Certain Veil Piercing Claims are Property of the Estate Pursuant to 11 U.S.C. § 541; (III) Pursuant to Bankruptcy Code §362(k), Awarding the Debtor Reasonable Costs and Attorneys' Fees for Willful Violations of the Automatic Stay; and (IV) in the Alternative, Granting an Injunction Pursuant to 11 U.S.C. §105(a)* (ECF Doc. No. 46) (the "Stay Enforcement Motion"), seeking, among other things, to stay *Ebin II* and a determination that certain of the Alter Ego Claims alleged by Class Plaintiffs in *Ebin II* were property of the Debtor's estate.

14.     On June 27, 2014, Class Plaintiffs moved to either dismiss the Debtor's bankruptcy case or to lift the automatic stay as to *Ebin I* (ECF Doc. No. 78) ("Class Plaintiffs' Lift Stay Motion").

15.     On July 13, 2014, the Debtor filed the *Plan of Reorganization for Kangadis Food Inc. Under Chapter 11 of the Bankruptcy Code* (ECF Doc. No. 119) (the "Plan").

16.     After full briefing by the Debtor and Class Plaintiffs, on July 16, 2014, the Bankruptcy Court conducted a hearing in connection with the Stay Enforcement Motion and Class Plaintiffs' Lift Stay Motion.

17.     At that hearing, the Bankruptcy Court denied Class Plaintiffs' Lift Stay Motion and the Debtor's Stay Enforcement Motion and, on July 28, 2014, the Bankruptcy Court entered Supplemental Findings (the "Supplemental Findings") (ECF Doc. No. 144) regarding its denial of the Stay Enforcement Motion and Class Plaintiffs' Lift Stay Motion.

18.     In the Supplemental findings, the Court stated that:

AROSEN/1606512.4/063637

> The Class Action complaint contains allegations that the principals harmed the Class Action Plaintiffs based on their own conduct. While piercing the corporate veil seems a necessary component of finding liability against the individual insiders, the Class Action Plaintiffs claim that this is not the case. This will be their burden to prove before Judge Rakoff in the trial scheduled for November, 2014. T*o the extent their claims rely on piercing the corporate veil of the Debtor, the Class Action Plaintiffs are aware of the consequences as they have appear to have read, and have cited to this Court's In re Pitts decision in their brief.  2009 WL 4807615 (Bankr. E.D.N.Y. 2009).*

Supplemental Findings, p. 13.

19.    Class Plaintiffs appealed from the Bankruptcy Court's July 16, 2014 denial of Class Plaintiffs' Lift Stay Motion and from the July 28, 2014 Supplemental Findings.  That appeal is currently pending before the United States District Court for the Eastern District of New York, Index No. 1:14-cv-05493 (DLI).

20.    On July 30, 2014, Class Plaintiffs filed a proof of claim in the amount of $261,640,038.59 against the Debtor's estate, designated Claim No. 14 on the Debtor's claims register (the "Class Claim").

21.    On August 1, 2014, each of the KFM Parties filed an unliquidated proof of claim (P.O.C. Nos. 18, 19, 20, and 21) (collectively, the "KFM Parties' Claims") against the Debtor's estate to preserve their rights for indemnification, contribution, reimbursement and other available remedies available in connection with their defense of *Ebin II.*

22.    On August 12, 2014, the KFM Parties moved to dismiss *Ebin II*.

23.    On September 18, 2014, Judge Rakoff granted, in part, the KFM Parties' motion to dismiss *Ebin II* (the ("*Ebin II* Dismissal Order"), a copy of which is annexed as **Exhibit E** to the Acampora Declaration.

24.    In the *Ebin II* Dismissal Order, Judge Rakoff held that "barring exceptional circumstances not here present, there can be no individual liability for Aristidis Kangadis and Themis Kangadis except on an alter ego or veil piercing theory. At oral argument, plaintiffs

conceded as much. . . .  Thus, the claims of personal or direct liability of Aristidis Kangadis and

Themis Kangadis must be dismissed." *Ebin II* Dismissal Order, p. 3.

25.    Based upon the *Ebin II* Dismissal Order, Class Plaintiffs' *only* remaining claims in

*Ebin II* consist exclusively of their Alter Ego Claims against the KFM Parties.

26.    On September 24, 2014, Class Plaintiffs filed a motion (ECF Doc. No. 205) (the

"Renewed Lift Stay Motion") to renew their initially filed Lift Stay Motion.[2]

27.    On September 30, 2014, the Debtor commenced the instant adversary

proceeding.

## ARGUMENT

**Unusual Circumstances Exist Which**
**Justify Extension of the Stay to Non-Debtors**

28.    Stays under Bankruptcy Code §362 generally do not cover non-debtor entities.

*See Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *In re Adler*,

494 B.R. 43 (Bankr. E.D.N.Y. 2013) (Grossman, J.).  Nevertheless, a bankruptcy court may

enjoin actions against third-parties in "unusual circumstances."  *See A.H. Robins Co., Inc. v.*

*Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), *cert. denied*, 479 U.S. 876, 107 S. Ct. 251, 93 L. Ed.

2d 177 (1986).  In the Second Circuit, unusual circumstances exist "when a claim against the

non-debtor will have an immediate adverse economic consequence for the debtor's estate."

*Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003); *see also In re Adler*, 494 B.R. at

57; *In re Pitts*, 2009 Bankr. LEXIS 4023 (Bankr. E.D.N.Y. 2009) (Grossman, J.); *In re Robert*

*Plan Corp.*, 2010 U.S. Dist. LEXIS 27200 (E.D.N.Y. March 23, 2010) (affirming Judge

Grossman's decision to enjoin state court contempt lawsuit against debtor's officers, because

the debtor's estate would likely face adverse economic consequences based on the fact that

under the debtor's by-laws, the officers were likely entitled to indemnification from the debtor).

---

[2] To date, no hearing has been scheduled on the Renewed Lift Stay Motion, and the Debtor does not believe that the Court has jurisdiction to consider the Renewed Lift Stay Motion in light of the Class Plaintiffs' appeal from the Court's denial of the Class Plaintiffs' Lift Stay Motion.  *See In re Strawberry Square Assocs.,* 152 B.R. 699, 701 (Bankr. E.D.N.Y.1993) ("An appeal divests the lower court of jurisdiction regarding those issues under appeal.").

AROSEN/1606512.4/063637

29.    "Immediate adverse economic consequences" include actions in which there is an identity between the debtor and third-party defendant such that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.  *Queenie*, 321 F.3d at 287; *see also In re Pitts*, 2009 Bankr. LEXIS 4023 at *19.    The "adverse economic consequence" requirement includes any perceptible economic harm to a non-party debtor's tangible or intangible property interest.[3]  It also includes the economic harm suffered when the corporate veil is pierced under the alter ego doctrine and the debtor becomes liable for the debts of the non-debtor.  *See In re Pitts*, 2009 Bankr. LEXIS 4023 at *21-22.

30.    As explained in *Adler*, although some courts have limited *Queenie* to chapter 11 reorganizations,[4] the foregoing "illustration was neither limited to chapter 11 debtors nor did it require that a plan of reorganization be endangered. So long as a debtor was 'the real party defendant' during the relevant post-petition judicial proceeding, the automatic stay had applied…."  *In re Adler*, 494 B.R. at 60.    Nevertheless, a threat to a chapter 11 debtor's reorganization is also "a persuasive reason" for the stay to extend to a non-debtor.  *In re Adler*, 494 B.R. at 60.[5]

31.    Here, the continued prosecution of *Ebin II* by Class Plaintiffs (a) will have an immediate adverse economic consequence on the Debtor's estate, and (b) constitutes a real and serious threat to the Debtor's reorganization.  If *Ebin II* is permitted to proceed, there is a serious risk that the District Court will make an inconsistent finding regarding the Debtor's

---

[3] *See generally Stephen Inv. Sec. v. SEC*, 27 F.3d 339, 342 n.5 (8th Cir. 1994); *N. Star Contracting v. McSpedon (In re N. Star Contracting Corp.)*, 125 B.R. 368, 370 (Bankr. S.D.N.Y. 1991).

[4] *See Adler*, 395 B.R. at 59 (citing *Uto v. Job Site Servs.*, 444 B.R. 222, 224 (E.D.N.Y. 2011) and *Capitol Records, Inc. v. MP3tunes, LLC*, No. 07-CV-9931 (WHP), 2012 U.S. Dist. LEXIS 87718, at *3-4 (S.D.N.Y. June 25, 2012)).

[5]  In *Pitts*, this Court concluded that the foregoing exception was inapplicable in that case because there was no risk to the debtor's reorganization if the stay was not extended because the *Pitts* debtor was in liquidation.  The Court distinguished *Neuman v. Hospital Consultants (In re Neuman)*, 128 B.R. 333 (Bankr. S.D.N.Y. 1991) because the actions taken against the non-debtor defendants were found to have had a significant and immediate negative impact on the debtor's ongoing chapter 11 bankruptcy cases and violated the automatic stay. The same significant and negative impact is present in this case.

AROSEN/1606512.4/063637

liability to Class Plaintiffs, because the District Court will necessarily determine the Debtor's liability in order to fix any potential alter ego liability.  Class Plaintiffs concede this point in the Renewed Lift Stay Motion by stating that Class Plaintiffs "will pursue identical claims based on identical allegations at trial" before the District Court, Renewed Lift Stay Motion, ¶23, and "whatever estimate this Court makes of the Class [C]laim will be undermined when the *Ebin II* verdict is rendered.  A significant disparity between this Court's estimate of the claim and the actual verdict will cast an unseemly pall over the estimation proceeding." *Id.*, ¶8.

32.     Additionally, the KFM Parties may be forced to conserve their resources to defend *Ebin II* rather than devote substantial sums under the Plan.  For example, Themistoklis Kangadis has committed under the Plan to contribute cash and other items as part of his "new value" contribution for equity in the reorganized debtor.  If he is forced to utilize his personal funds defending *Ebin II,* he may choose (for lack of funds or other reasons) not to contribute the same amount of cash and other items under the Plan as part of his "new value" contribution.  That results in a direct, adverse effect on the estate and the Debtor's Plan.  Specifically, if the equity in the reorganized debtor is not purchased by Themistoklis Kangadis because some other third-party was willing to contribute more, then the business relationships and years of knowledge held by Themistoklis Kangadis and the other KFM Parties will be lost, to the detriment of the Debtor, its estate, and its creditors.

33.     If Class Plaintiffs are unsuccessful in their prosecution of the *Ebin II* Alter Ego Claims, then funds that could have been used to pay creditors under the Plan will have been wasted.  If Class Plaintiffs *are* successful in *Ebin II* and establish (as they must) that the KFM Parties are, in fact, the Debtor's alter egos, the proper application of *Pitts* would require a finding that (a) the Debtor was actually a party to Class Plaintiffs' post-petition *Ebin II* action, (b) the automatic stay applied, and (c) any judgment rendered in *Ebin II* was void.  In that event, funds that could have been used to pay creditors will have been similarly wasted.  In fact, under either

scenario, funds that could have been used to pay creditors under the Plan will have been wasted.[6]

34.    Consequently, regardless of the outcome of *Ebin II*, its continued prosecution will have an immediate adverse economic consequence on the Debtor's estate.  The Debtor's plan and its successful reorganization will be in serious jeopardy if *Ebin II* is permitted to proceed. The foregoing constitute "unusual circumstances" that require that *Ebin II* be stayed.

**Class Plaintiffs are Prosecuting Alter Ego**
**Claims that are Property of the Debtor's Estate**

35.    In the case of *In re Yerushalmi*, 487 B.R 98 (Bankr. E.D.N.Y. 2012) (Grossman, J.), this Court recognized that "(a) if the alter ego claim could have been asserted by the Debtor pre-petition, *and* (b) if the claim does not involve a direct injury to a particular creditor, then the bankruptcy trustee is the proper party to assert the alter ego claim and all other creditors are stayed" by Bankruptcy Code §362.  *Yerushalmi*, 487 B.R. at 105 (emphasis original).[7]

36.    In this case, Judge Rakoff's *Ebin II* Dismissal Order makes it clear that Class Plaintiffs do not have **any** direct claims against the KFM Parties.  Judge Rakoff held that "barring exceptional circumstances not here present, there can be no individual liability for Aristidis Kangadis and Themis Kangadis except on an alter ego or veil piercing theory. ***At oral argument, plaintiffs conceded as much***. . . .  Thus, the claims of personal or direct liability of Aristidis Kangadis and Themis Kangadis must be dismissed." *Ebin II* Dismissal Order, p. 3

---

[6]  In the unlikely event that the Class Plaintiffs are successful in *Ebin II* and the Court does *not* apply *Pitts,* the Debtor may be liable for all of the KFM Parties' debts and obligations, including but not limited, any judgment rendered against them in *Ebin II*.  *See* KFM Parties' Claims.  In that event, the Class Plaintiffs will have obtained indirectly the result that this Court denied them – the vacatur of the automatic stay in order to fix the Debtor's liability through *Ebin II*.

[7]  "If the cause of action belongs to the estate, the trustee has exclusive standing to assert it; conversely, if the cause of action belongs solely to the … creditors, the trustee has no standing to assert it."  *In re Granite Partners, L.P.*, 194 B.R. 318, 324-25 (Bankr. S.D.N.Y. 1996).  Consequently, when "the trustee has standing to sue, the automatic stay prevents creditors or shareholders from asserting the claim notwithstanding that outside of bankruptcy, they have a right to  do so." *Id.* at 325.

AROSEN/1606512.4/063637

(emphasis supplied).[8]    Consequently, all that remain in *Ebin II* are Class Plaintiffs' Alter Ego

Claims against the KFM Parties.

37.    When those remaining Alter Ego Claims are examined in light of prevailing case

law it is clear that they are property of the estate.

38.    The *Ebin II* Complaint is a virtual mirror of the *Ebin I* complaint against the Debtor

and contains additional "Veil Piercing / Alter Ego Allegations," *see* Complaint, pp. 29-35 against

the KFM Parties.  Specifically, Paragraph 71 of the *Ebin II* Complaint states that ███████████

████████████████████████████████████████████████ *Ebin II* Complaint ¶71.

Paragraphs 73-76 of the *Ebin II* Complaint allege that ████████████████████████████████

█████████████████    Paragraph 73 alleges that ████████████████████████████████

████████████████████████████ *Ebin II* Complaint ¶73.  Paragraph 74 alleges that ███████

████████████████████████████████. *Ebin II* Complaint ¶74.  Paragraph 75 states that

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████ *Ebin II* Complaint ¶75.  Paragraph 76 states that ███████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████ *Ebin II*

Complaint ¶76.

39.    Courts have uniformly held that claims that a corporation was operated as a

"sham" to insulate the individual defendants from liability inure to the benefit of all creditors and

are "generalized" claims.  *See, e.g.*, *Alvarez v. Ward*, 2011 U.S. Dist. LEXIS 151873, at \*11

(W.D.N.C. 2011) ("To the extent that Plaintiffs assert claims against Defendants based on a

theory that they exercised complete control and dominion over [the debtor] and operated it as a

---

[8] Interestingly, at virtually the same time, the Class Plaintiffs were advising the Bankruptcy Court that they would *not* be required to pierce the corporate veil or establish the alter ego doctrine.  As this Court stated during the July 16, 2014 hearing, "the class action complaint contains allegations that the principals harmed the class plaintiffs based on their own conduct. While piercing the corporate veil seems a necessary component of finding liability against the individual insiders, the class action plaintiff's claim that this is not the case." Transcript of July 16, 2014 Hearing, 75:6-11.  Clearly, the generalized alter ego theories are all that remain of the *Ebin II* Complaint.

sham corporation and as their alter ego, such claims belong to the estate and must be asserted by the trustee."); *In re Alper Holdings USA, et al.*, 2008 Bankr. LEXIS 522 (Bankr. S.D.N.Y. 2008) (holding that alter ego claims were "generalized" when claims alleged that debtor and its subsidiary "operated as a single economic unit maintaining the same office space and over lapping employees"); *see also In re Cabrini Med. Ctr.*, 489 B.R.7, 22 (S.D.N.Y. 2012) ("It is irrelevant that the State Court complaint did not specifically allege that harm accrued to the general creditors of [the debtor]. What is relevant is that the kind of harm alleged by the State Court complaint was no different from the harm suffered by the unsecured creditors of [the debtor] generally, *i.e.* that due to the diminution of [the debtor's] assets by [the debtor's alter ego], they would not fully recover their claims. Because [the debtor's alter ego] caused [the debtor] to dissipate its assets, all general creditors were harmed. . . . Once the petition was filed, all such claims became property of the estate"); *Holcomb v. Pilot Freight Carriers, Inc.*, 120 B.R. 35, 42 (M.D.N.C. 1990) ("Alter ego claims such as the ones in this case most often involve harm from secondary conduct since such claims are based on allegations that the bankrupt debtor was run as a sham corporation.").

40.     Similarly, Paragraph 77 of the *Ebin II* Complaint states that ███████████

███████████████████████████████████████████████████ *Ebin II* Complaint

¶77. Paragraph 78 of the *Ebin II* Complaint alleges that ████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████ *Ebin II* Complaint ¶78. Those types of allegations of looting a corporation have universally been held to inure to the benefit of all creditors and are "generalized" claims. *See, e.g.*, *Alvarez v. Ward*, 2011 U.S. Dist. LEXIS 151873, at *11 (W.D.N.C. 2011) ("Similarly, Plaintiffs' claims that are based on the alleged siphoning of funds [by the alleged alter ego] from [the debtor] are also property of the estate."); *In re Alper Holdings USA, et al.*, 2008 Bankr. LEXIS 522 (Bankr. S.D.N.Y. 2008) ("Clearly, claims of gross undercapitalization and fraudulent transfer such as those averred in the

[complaint] are of a generalized nature and do not allege a 'particularized injury' specific to the [plaintiffs] only and not [the former debtor's] body of creditors at large."); *Murray v. Miner*, 876 F. Supp. 512, 517 (S.D.N.Y. 1995) (holding that allegations that defendants "wasted the [debtor's] assets, and impaired [a debtor's] ability to meet obligations" were generalized claims that had already been properly brought by a trustee).

41.    In sum, each of the Alter Ego Allegations alleges a harm that, if true, damaged the Debtor itself (and thereby *all* of its creditors), not exclusively and specifically Class Plaintiffs, and, therefore, are "generalized" alter ego claims.

42.    That conclusion is further supported by Class Plaintiffs' stated position that they are the prohibitively largest unsecured creditors in the Debtor's bankruptcy case.  Here, Class Plaintiffs filed the Class Claim in the amount of $261,640,038.59.   To date, all general unsecured claims filed in the Debtor's case, other than the Class Claim, total $789,241.80.[9] Accordingly, the aggregate amount of general unsecured claims filed against the Debtor is $262,429,280.40.   Assuming, as Class Plaintiffs have asserted throughout this case, that the filed amount of the Class Claim is an accurate reflection of the Debtor's liability to Class Plaintiffs, the Class Claim would represent approximately 99.7% of the general unsecured claims filed against the estate.[10]   Indeed, Class Plaintiffs repeatedly advised this Court that "there are no creditors . . . [o]ther than [Class Plaintiffs]." Transcript of July 16, 2014 Hearing, 19:25–20:3.

43.    When faced with a similar issue, the bankruptcy court in *Tsai v. Buildings by Jamie, Inc. (In re Buildings by Jamie)*, 230 B.R. 36, 44 (Bankr. D.N.J. 1998), found that when

---

[9]   This figure includes a claim filed by Ben Gregory Triestman, in the amount of $360,000.00, which essentially mirrors all allegations contained in *Ebin I.*  The Debtor intends to object to that claim, but have included it for illustrative purposes.  This value does not include a contingent, unliquidated claim filed by Wal-Mart Stores Inc. (Claim No. 23), which the Debtor believes was incorrectly marked on the Debtor's claims register as having been filed in the amount of $35,491.50.

[10]   In fact, when accounting for *all* claims filed against the Debtor's estate, including the secured claim of Citibank, N.A., the Class Claim represents approximately 98.37% of claims filed against the Debtor.

the creditors who sought to proceed with an alter ego action constituted the entirety of the

creditor body, they lacked standing to prosecute an alter ego veil-piercing claim against non-

debtor defendants because the claim constituted property of the bankruptcy estate.  That court

stated:

> [T]he creditors named as plaintiffs in the state court proceeding
> and those named as co- plaintiffs in the instant adversary action
> are the complete and exclusive creditor body. As such, injury to
> the creditor plaintiffs *automatically* presents a claim for
> generalized harm since the creditors asserting injury comprise the
> entire creditor body. Thus, any recovery on the alter ego claim
> would necessarily inure to the benefit of all creditors…. Recovery
> on the alter ego claim would benefit the bankruptcy estate as a
> whole, consequently, the alter ego claim is properly characterized
> as a general claim as to which the trustee alone has standing as
> representative of the estate.

*Buildings by Jamie*, 230 B.R. 44 (emphasis supplied).   "Recovery on the alter ego claim would

benefit the bankruptcy estate as a whole, consequently, the alter ego is properly characterized

as a general claim as to which the trustee alone has standing as representative of the estate."

*In re Buildings by Jamie, Inc.*, 230 B.R. 36, 44 (Bankr. D. N. J. 1998). *See also, In re Porras*,

312 B.R. 81 (Bankr. W. D. Tex. 2004); *Hollister v. MacDonald (In re MacDonald)*, 2007 Bankr.

LEXIS 3143, 5-7 (Bankr. S.D. Fla. Sept. 10, 2007).

44.      Based upon all of the facts and circumstances as well as the prevailing law,

Class Plaintiffs' remaining Alter Ego Claims are property of the Debtor's estate which should be

prosecuted, if at all, by the Debtor.  It is also relevant that the Debtor's Plan provides for the

settlement of Alter Ego Claims, which are property of the estate.  If those claims are not

controlled by the Debtor, then it is unlikely that the KFM Parties will pay the proposed

$100,000.00 to settle those claims under the Plan.

45.      Indeed, Class Plaintiffs, who claim to constitute the entire creditor body, are

content to jeopardize the Debtor's chapter 11 reorganization to the exclusion of the other

legitimate creditors.  Taken to the absurd extreme urged by Class Plaintiffs, the continued

prosecution of *Ebin II* would result in payment of the lion's share of any funds available to

creditors under the Debtor's Plan to Class Plaintiffs[11] *and* a judgment against the KFM Parties

that would inure *only* to Class Plaintiffs.

## CONCLUSION

46.    The Debtor has served notice of this Motion on counsel to Class Plaintiffs. In

light of the nature of the relief requested, the Debtor submits that additional notice is neither

necessary nor required.

47.    Except for the Debtor's Stay Enforcement Motion, including a request to impose

sanctions on Bursor & Fisher, P.A., no previous request for the relief sought herein has been

made by the Debtor to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court grant the Debtor's

Motion, and grant the Debtor such other and further relief as is just and appropriate.

Dated: Jericho, New York
    September 30, 2014                    **SILVERMANACAMPORA LLP**
                                        Attorneys for Kangadis Food Inc.


                                        By: *s/ Anthony C. Acampora*
                                            Anthony C. Acampora
                                        Member of the Firm
                                        100 Jericho Quadrangle, Suite 300
                                        Jericho, New York 11753
                                        (516) 479-6300

---

[11] The following example is for illustrative purposes only.  If, pursuant to the Debtor's Plan, $2 million was ultimately paid to general unsecured creditors, the Class Claim as filed would cause all general unsecured creditors other than the Class Plaintiffs to receive approximately $6,014.89.  Even assuming that the Class Claim is ultimately estimated by this Court at $20 million, all other general unsecured creditors would receive $75,927.91 of the available $2 million in that scenario.

AROSEN/1606512.4/063637